IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| CRAIG GROAT, | ) | |
| | ) | CASE NO. BK05-42759 |
| Debtor(s). | ) | A06-4019 |
| CRAIG GROAT, | ) | |
| | ) | |
| Plaintiff, | ) | CH. 13 |
| | ) | |
| vs. | ) | |
| | ) | |
| DONALD CARLSON, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM

    This matter is before the court on cross-motions for summary judgment by the defendant (Fil. #40) and the plaintiff-debtor (Fil. #46). The debtor is representing himself, and Trev Peterson represents the defendant. The motion was taken under advisement as submitted without oral arguments. This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(B).

    The debtor borrowed $22,500 from First Security Mortgage Company in September 2002 via a promissory note, giving the company a deed of trust on his residence as collateral. First Security assigned the note to Donald Carlson in October 2002. Mr. Carlson later loaned $24,000 directly to the debtor in April 2004, secured by another deed of trust on the debtor's residence. A "notice of right to cancel" under the Federal Truth in Lending Act (15 U.S.C. §§ 1601-1693r) was provided to the debtor in connection with each note at the time of each transaction, although an incorrect cancellation date was provided in the 2002 notice. The unpaid balance of each note is currently more than $29,000.

    As part of his bankruptcy case, the debtor is attempting to rescind the transactions, cancel the debts, set aside Mr. Carlson's deeds of trust, and obtain damages. Mr. Carlson has moved for summary judgment in full or in part as to the 2004 rescission notice and the issue of whether the lender should have signed the notices. The debtor has moved for summary judgment in his favor on all of the issues in the lawsuit.

I. Legal standards

  A. Summary judgment standard

  Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Aviation Charter, Inc. v. Aviation Research Group/US, 416 F.3d 864, 868 (8th Cir. 2005); Ferris, Baker Watts, Inc. v. Stephenson (In re MJK Clearing, Inc.), 371 F.3d 397, 401 (8th Cir. 2004).

  In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record. Widoe v. District No. 111 Otoe County Sch., 147 F.3d 726, 728 (8th Cir. 1998); Ghane v. West, 148 F.3d 979, 981 (8th Cir. 1998).

  Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52. Moreover, although under Federal Rule of Civil Procedure 56 due deference must be given to the rights of litigants to have their claims adjudicated by the appropriate finder of fact, equal deference must be given under Rule 56 to the rights of those defending against such claims to have a just, speedy and inexpensive determination of the action where the claims have no factual basis. Celotex Corp. v. Catrett, 477 U.S. at 327.

  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "We look to the substantive law to determine whether an element is essential to a case, and only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Williams v. Marlar (In re Marlar), 252 B.R. 743, 751 (B.A.P. 8th Cir. 2000) (quoting Ries v. Wintz Properties, Inc. (In re Wintz Cos.), 230 B.R. 848, 858 (B.A.P. 8th Cir. 1999)) (internal quotations omitted).

  B. Truth in Lending Act

  For a consumer credit transaction in which a lender takes a security interest in the borrower's principal dwelling, the Truth in Lending Act ("TILA") permits the borrower to rescind the transaction within three business days of the consummation of the transaction by so notifying the lender. 15 U.S.C. § 1635(a). The transaction is considered consummated when the borrower becomes contractually obligated on the loan. Gaona v. Town & Country Credit, 324 F.3d 1050 (8th Cir. 2003). If the lender fails to provide required notices and disclosures to the borrower, the right of rescission is extended to three years after the transaction. 15 U.S.C. § 1635(f).

  TILA regulations require the notice to "clearly and conspicuously" disclose the following information:

(i) The retention or acquisition of a security interest in the consumer's principal dwelling.

(ii) The consumer's right to rescind the transaction.

(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(iv) The effects of rescission . . . .

(v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

The regulations also provide a model form for providing the appropriate notice. 12 C.F.R. Part 226, App. H-8. A creditor "shall be deemed to be in compliance with the disclosure provisions of this subchapter with respect to other than numerical disclosures if the creditor or lessor (1) uses any appropriate model form or clause as published by the Board, or" (2) uses a modified model form if the modification "does not affect the substance, clarity, or meaningful sequence of the disclosure." 15 U.S.C. § 1604(b).

## II. Discussion

### A. Notice form

The substance of both notices of the right to cancel provided to the debtor conform to the model notice provided in Appendix H-8. Both were signed by the debtor on the same dates that the notes were made. The debtor questions the legality of the notices because neither is signed by the creditor, but the debtor has not pointed to, nor have I found, any requirement that the creditor must sign the notices for them to be valid.

### B. 2002 notice

The creditor acknowledges that the 2002 notice contains an incorrect cancellation deadline. The notice was given on September 5, 2002, and the debtor acknowledged receipt on that date. In the "How to Cancel" section of the notice, the debtor is advised that if he desires to cancel the transaction by mail or telegram, he must "send the notice no later than midnight of <u>September 10, 2001</u> (or midnight of the third business day following the latest of [the transaction date, the date the debtor received the Truth in Lending disclosures, or the date the debtor received notice of his right to cancel]." Ex. 4 to Affid. of Larry Ohs (Fil. #42).

The creditor maintains that the incorrect year is simply a typographical error, as the other documents executed in connection with the loan clearly show that the transaction occurred on September 5, 2002, and the third business day following Thursday, September 5, 2002, was

Tuesday, September 10, 2002.

TILA provides a safe harbor for creditors who commit unintentional notice violations:

> A creditor or assignee may not be held liable in any action brought under this section or section 1635 of this title for a violation of this subchapter if the creditor or assignee shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error. Examples of a bona fide error include, but are not limited to, clerical, calculation, computer malfunction and progra[m]ming, and printing errors, except that an error of legal judgment with respect to a person's obligations under this subchapter is not a bona fide error.

15 U.S.C. § 1640(c).

Section 1640(c) has two parts: it requires a showing of a bona fide error as well as the creditor's "maintenance of procedures reasonably adapted to avoid any such error." The defense is applicable only in a narrow range of situations and depends on the facts of each case. Yarnall v. Four Aces Emporium, Inc. (In re Boganski), 322 B.R. 422, 427 (B.A.P. 9th Cir. 2005). While there appears to be a paucity of reported cases dealing with the factual scenario of a mis-typed date in an otherwise valid notice, this must fall within the protections of the statute. See Watson v. U.S. Bank Nat'l Ass'n, Inc., No. Civ. A. 05-0244-CG-C, 2006 WL 328174 (S.D. Ala. Feb. 10, 2006) (form misaligned in printer such that first digit of purchase option price was illegible constituted an unintentional clerical error); Doubet v. USA Fin'l Servs., Inc., 714 F. Supp. 980 (C.D. Ill. 1987) (misprint resulting from slipped carbon is a bona fide error). The date of September 10 is correct; only the year is misstated, and that misstatement is not misleading — anyone reading the document would know that the cancellation deadline could not have passed before the document was even executed. Cases which have denied creditors the protection of § 1640(c) have done so for errors more substantive than an incorrect year. See, e.g., LaPetina v. Metro Ford Truck Sales, Inc., 648 F.2d 283 (5th Cir. 1981) (truck salesman miscalculated vehicle's age, so interest rate in retail installment sales contract was too high); Herrera v. First N. Sav. & Loan Ass'n, 805 F.2d 896 (10th Cir. 1986) (creditor's failure to use TILA-compliant disclosure statement is not excusable under § 1640(c)); Abel v. Knickerbocker Realty Co., 846 F. Supp. 445 (D. Md. 1994) (attorney's failure to include origination fee on the disclosure form was not bona fide error because creditor had no procedures in place to avoid such an error); Webster v. Centex Home Equity Corp. (In re Webster), 300 B.R. 787 (Bankr. W.D. Okla. 2003) (lender's employee's failure to follow lender's instructions at loan closing was not bona fide error); Boyajian v. Assoc. Fin'l Servs. Co. of Rhode Island (In re Sherman), 13 B.R. 259 (Bankr. D.R.I. 1981) (disclosure statement's inadequate description of the security interests taken is not bona fide error).

The creditor must prove both prongs of § 1640(c) to receive its protection. To show the lender's "maintenance of procedures reasonably adapted to avoid" bona fide errors, the attorney for the lender at the time of the transaction at issue submitted an affidavit (Fil. #42) in which he describes his office procedures regarding the creation and completion of loan documents. He states

that his assistant, trained in the preparation of such documents, prepared the documents for him. He proofread the documents, and he and his assistant went over the documents with the debtor at the time of the transaction. However, at no time in this process did they notice the incorrect date, nor did the debtor bring it to their attention at the time. It appears this was an isolated typographical error which at least two pairs of eyes failed to catch. This is not the type of notice defect that constitutes a TILA violation. See Henning v. Daniels, 653 F.2d 104, 107 (4th Cir. 1981) (failure to check box on security agreement regarding insurance coverage was an oversight given creditor's normal practice of proofreading the agreements); Hutchings v. Beneficial Fin. Co. of Oregon, 646 F.2d 389, 391 (9th Cir. 1981) (10-cent miscalculation was bona fide error, given evidence that creditor checked and double-checked the figures).

      C.      2004 notice

The debtor's complaints about the notice of his right to cancel the 2004 loan transaction are unclear. His written materials focus on his argument that the date error in the 2002 notice violates TILA; there do not seem to be any arguments directed specifically at the 2004 notice. Having reviewed the 2004 notice, it appears to be TILA-compliant on its face. Presumably, the debtor desires to rescind both agreements in order to clear both security interests from his title. Without more than the debtor's nebulous and unsupported assertions of predatory lending by the defendant, this cause of action cannot go forward. Summary judgment will be entered in Mr. Carlson's favor.

### III. Conclusion

The debtor has not established any TILA violations by Mr. Carlson. The debtor appears to have received proper financial disclosures and notification of his right to cancel the loan transactions. The incorrect year in the 2002 notice was inconsequential. The debtor did not attempt to rescind either transaction until well after the three-day deadlines for doing so had passed. Notwithstanding the untimeliness of his rescission requests, there is no evidence he was financially capable of returning the funds to Mr. Carlson, as required under 12 C.F.R. § 226.23(d).[1] Summary

---

[1](d) Effects of rescission.
> (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>
> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.
>
> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph
> (continued...)

judgment will be entered in favor of the defendant on each cause of action. Separate judgment will be entered.

    DATED:    October 5, 2006

    BY THE COURT:

    /s/ Timothy J. Mahoney
    Chief Judge

Notice given by the Court to:
    *Craig Groat
    *Trev Peterson
    Kathleen Laughlin
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.

---

[1](...continued)
(d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

12 C.F.R. § 226.23